Restoration Hardware, Inc. Mr. Vickers. May it please the Court, I'm Adam Vickers with Intellectual Property Consulting. I represent Tara Shaw and Tara Shaw Designs, Ltd. Your Honors, my client is a local businesswoman here in New Orleans. She designs, makes, and sells furniture. She has a shop on Magazine Street. Some time ago, Ms. Shaw entered into a written agreement with Restoration Hardware, who I'll refer to as RH, if that's okay with the Court. In that written agreement, she licensed some of her designs to RH, and in exchange, RH was going to pay her royalties for selling furniture based on her designs. Soon after that, RH came back to my client and explained to Ms. Shaw that they didn't have the craftspeople with the skill to make her specific furniture designs. They asked Ms. Shaw, who do you use, and will you make an introduction? Ms. Shaw expressed reluctance because she explained that she had spent a lot of time and resources training certain artisans and craftspeople to make her furniture. The RH representative said, well, look, how about this? If you'll disclose who they are and make an introduction, we will agree that we will use these folks only for Shaw designs, and not for any other work. That was the oral agreement upon which our case is based. It was not a written agreement. Ms. Shaw agreed, and she disclosed the folks that she uses to RH. Then she went back and found out later that RH was actually using these folks for non-Shaw work. That's the breach of the oral agreement upon which our case is based. Back up just one second. When the parties entered into the oral agreement, there was a discussion about perhaps they would modify the oral agreement in the future. Perhaps there would arise a circumstance in which Ms. Shaw would agree to release RH from the restrictive covenant. They didn't express what terms that would be, but just like most commercial arrangements, they acknowledged that there might be an opportunity to amend the agreement in the future. Your Honors, I would like to first address the procedural issues in this case. If it pleases the Court, I would like to move to the unjust enrichment claim and then the breach of contract and detrimental reliance claims. First, just one second on standard of review. Of course, de novo is the standard of review for dismissal of our claims. The District Court also denied our motion for leave to amend the pleadings. Normally, that is reviewed under an abuse of discretion standard. However, in this case, the Court determined that any amendment would be futile. Fifth Circuit precedent is very clear that a ruling denying a motion for leave to amend pleadings based on futility is subject to a de novo standard of review. Now, Your Honors, procedurally, we first amended our initial complaint by right. Soon thereafter, RH filed a motion to dismiss, and then we asked the Court for leave to amend the pleadings. Our request for leave to amend was made almost two full months before the Court's initial deadline to amend pleadings, in its initial scheduling order. We are well within Rule 15 territory here. As we know, under Rule 15, the District Court is to freely allow leave to amend, unless there's some sort of a strange situation, like for example, if there was some bad faith, which certainly wasn't found here. Did you proper what the nature of the proposed amendment was going to be or look like that formed the basis of the Court saying it would be futile? Yes, sir, we did in the motion for reconsideration after the Court dismissed the First Amendment complaint. When we asked the Court for leave originally, we explained to the Court that in its infancy, and that depending on what we learn and discover, we might need to add new parties, or we might need to otherwise amend the claims or the fact allegations. That's what we explained to the Court. Then when the Court finally just dismissed the First Amendment complaint, the District Court then said, well, look, I'll give you thirty days to amend just to add parties, but not to change any of the pleadings or any of the pleadings. Then in the motion for reconsideration is when we submitted a second amendment complaint to the Court. The fact is the Court did not allow us to freely amend despite the fact that we were squarely within the early stages of discovery. In fact, when the Court issued its order dismissing our First Amendment complaint, we had just gone through a motion to compel document production at that point. Your Honor, this is the easy way to dispose of this case. If the Court rules, if the Court reverses the District Court and allows us freedom to amend our complaint . . . What is the nature of what you're saying the amended complaint would be? What is the essence of that if you're saying that's the easy route for us to jettison the case and not get to an amendment? What is it? I mean, you wanted to add parties, but what's the core of what such an amendment would have been? Thank you, Your Honor. The core of it is to clarify our claims that the oral agreement was simply the quid pro quo between Ms. Shaw and RH, that RH would not use any of the artisans that Ms. Shaw disclosed to them for non-Shaw work. In other words, to put it on a positive spin, that they would only use these artisans for Shaw designs. In exchange, she would divulge that information to them. That's it. The District Court held that what you had was an agreement to agree. Based on what you said, you're reframing or emphasizing the initial argument about the oral agreement. I guess my question would be, since you're saying that the court denied it because it was futile, presumably, it viewed that you're just making the same argument that I've already denied, or putting more emphasis on the same as opposed to something else about the claims. Is that a fair assessment? The reason I'm asking it is trying to get to how that makes it a straighter line to dispose of the case because it seems we still got to get to this oral agreement in order to even get to that, which is what the merits is. Yes, sir. I do agree . . . You follow what I'm saying? I believe I follow you, Judge Stewart. What we sought to do in the Second Amendment complaint was to clarify that any discussion about whether the parties would amend their oral agreement in the future was not part of the original oral agreement. What the District Court did was grab on to that contextual reference to the fact that the parties discussed, maybe Ms. Shaw would release R.H. from its restrictive covenant, and the court said, look, that just infects the whole idea of an oral argument. Now, it's all an agreement to agree, which is absolutely not the case. In just about every single commercial agreement, the parties do contemplate, look, we might get together later and we might decide to amend our agreement. Amend your oral agreement or written agreement? The oral agreement, yes, Your Honor. But if the oral agreement is unenforceable in the first place, what difference does it make that you might amend the oral agreement at some point? I don't see where that gets you. Yes, Your Honor. I might not have articulated it well, and I apologize for that. The oral agreement was just the quid pro quo. Ms. Shaw would disclose the artisans she used in exchange for R.H.'s agreement not to use them for anything else, any other work. Now, what the district court did was grab on to the reference that we made in what may have been an inartful pleading to the fact that the parties discussed they might modify the agreement in the future. What we sought, what we seek to do in the second amended complaint is remove the reference to any discussion that they might modify the agreement. Okay. Let's say you do that. Then, isn't it straight up, can you enforce the oral agreement or not? Isn't that just a straight up question? Well, that would remove the district court's concern about whether there was an agreement to agree. Removing that reference to the parties' discussion about how they might modify the agreement or whether they might modify the agreement would address the court's concern because without that context, the court would not have dismissed our claim for breach of oral agreement. Your Honor, just to be clear, we're not trying to rewrite history here. It was in the pleadings. We're going to have to deal with it in discovery as the case proceeds anyway. But at this stage, at the pleading stage, Ms. Shaw is the master of her case and her complaint. Okay. The district court cannot compel Ms. Shaw to plead certain facts or not. Okay. So that's, and Judge Stewart, to your question, that is why we see this as an easier route for the court to dispose of the case. Well, the Chief asked you what I inartfully was trying to say. It just still seems like it's all evolving around your argument about the oral agreement. So I'm still not following why that's easier. So why don't you condense this on the main point? Well, the main point is . . . Anyway you go, you still have an oral agreement, right? Yes, sir, and the district court did not hold that an oral agreement in and of itself is unenforceable. The district court merely tied in the discussion about how the parties might modify their agreement into the oral agreement. That discussion was not part of the oral agreement. The oral agreement just had two parts. Okay. It had Ms. Shaw's agreement to disclose and RH's restrictive covenant, and that was it. That was part of it. In the original pleading, we said, look, down the road they discussed that they might modify it. And so by removing that concern, then we've addressed the concern by the district court. We've removed the rationale for the district court to hold that it was an agreement to agree. I guess fundamentally I have a problem with how can Ms. Shaw prevent restoration hardware from dealing with third parties as they choose? It's a good question, Your Honor, and a question that the district court asked, too. So normally the parties would be able to do that. In commercial agreements, parties often enter into some sort of a restriction. This is akin to a non-circumvent. For example, let's say my family and I go to the real estate agent that we work with, and we ask her to show us some houses because we want to buy a new house. In that listing agreement, there is an agreement that if she shows us a house, I won't go directly to the seller or homeowner and cut that real estate agent out of the deal. Now, on the other hand, I could just leave this courtroom today and go to a homeowner and strike a deal because I haven't engaged my real estate agent to do that, right? Similar in the restoration hardware situation, they could have found any artisans or craftsmen themselves and done a deal. They specifically came to Ms. Shaw for an introduction to these folks because they couldn't find anyone. Does that answer Your Honor's question? I'm not sure. Okay, so there was a quid pro quo. Restoration hardware needed folks who can make the furniture properly. Ms. Shaw said, I have connections with folks who make my furniture. They know how to do it. I will make an introduction if you will agree to only use them for my work. That's a perfectly enforceable agreement. People disclose confidential information, trade secret information, all of the time with restrictions around how that information can . . . It wasn't that if you do use them for other designs, you have to pay me a fee. It was that I don't want you using my artisans for other people's designs because they won't have time to do my designs. That's the way I understand the oral agreement. Yes, ma'am. You are exactly right, Your Honor. What are her damages when they do . . . I thought her damages were she wants commissions or some sort of payment on the designs for work on other people's designs. Not that she couldn't get her designs produced, but that she wants some sort of commission on other people's designs. Your Honor, we haven't developed a damages model yet because we haven't been able to get past the pleading stage yet. She could seek damages for having to go and find new artisans because . . . Is that what she alleged? We just alleged that she was harmed because R.H. violated the restrictive covenant. That was it. At the pleading stage, with all due respect to the court, plaintiffs are not required to present a full damages model and a full workup. No, but you've got to have some plausible claim that holds together. Yes, Your Honor. It's the fact that R.H. went around her and circumvented her to start using her artisans. Now we're into the domain of experts. Is it her loss for having to go train new folks? It seems to me we're into the expert of an unenforceable, against public policy, restrictive covenant. I'm going way out past that. I just had a hard time seeing how she could do that. Your Honor, it seems I'm out of time. Would you like me to address that now or shall I go on rebuttal? You've got rebuttal. You've got time. Thank you, Your Honor. Hello, Your Honors. May it please the court. Katherine Gonski on behalf of Restoration Hardware. I'd like to start with the suggestion that the standard of review is de novo on the leave to amend. It's not. The district court did not abuse its discretion in denying leave to amend, and that is what the standard of review is, and it's because his ruling was not solely based on the fact that the second amended complaint would be futile. It was part of it because it is futile, but it's not the only reason. Judge Lamel correctly found that the standard that applied here was Rule 16B, not 16A, and that's because exactly as you pointed out, Judge Stewart, when Shaw moved to amend, it was after a scheduling order had taken place. In her opposition to the motion to dismiss, she did this bare allegation of, hey, if you find you want to dismiss the claim, let me amend again. That's not enough. She didn't state any factual allegation as to how her second amended complaint would change the allegations, and she didn't proffer a second amended complaint. Actually, what she asked for in two separate pleadings was for leave to amend to add third parties, and that's exactly what the court ordered she could do. She wasn't happy with that. She then sought reconsideration. She then offers the second amended complaint, but that's not enough, and so the correct standard is abuse of discretion, and he did not abuse his discretion. The district court did not abuse its discretion in denying leave to amend here. So back to the basis of this, and one thing I think is extremely overarching here is the fact that in Iqbal, what the Supreme Court instructed federal courts to do in considering the plausibility standard and whether it's met is to draw on their judicial experience and is to draw on common sense, and this is particularly pertinent here when you're looking at what's alleged. Shaw asked this court to accept that Restoration Hardware, a large national company with thousands of employees, nearly 100 stores, that it allegedly promised to pay her for using public manufacturers, factories that Shaw didn't own, she didn't control, you can find them with a mere Google search, that R.H. promised to pay her to make Despite the fact that Shaw and R.H., and Shaw is a business owner, Shaw is nationally known, they had just entered into this written agreement in which R.H. would pay her royalties based on the products that it made that were hers. They didn't amend that written contract to incorporate this purported oral agreement. They didn't enter into a new written agreement to memorialize what she's now claiming. Instead, they supposedly made this binding contract through an oral conversation with an unidentified person at R.H. that would bind the company for all time. It's not plausible, and when you look at her allegations, they show exactly why it's not plausible. So with the breach of contract claim, it's not plausible that they made the agreement, or it's not plausible that it's enforceable? Both. It's not plausible she made it, and based on what she alleged, it is not plausible that it's enforceable. And here's why. What Shaw wants to say now is that this was a restrictive covenant, right? That R.H. promised not to do something. But that is not what she alleged. What she alleged in her original complaint was very clear. R.H. made an oral promise to Ms. Shaw that R.H. wouldn't use her manufacturers to make any products other than those embodying Shaw's designs without first reaching an agreement to compensate her for doing so. R.H. moved to dismiss. This is very clearly an unenforceable agreement to agree. With the benefit of our briefing, Shaw just moved some words around. She tried to split it up and say, oh, it's not to, it was an agreement not to do, but that's not what she says. She says, we agreed not to use these factories to make any non-Shaw products without her permission, but and plus it was understood that to get her permission, we had to enter into a separate agreement with Shaw to compensate her. And the breach that she's alleging, if you look very clearly at her first amended complaint, it's not that R.H. used W.J.C., that's the factory at issue. It's that R.H. used W.J.C. without obtaining permission from and paying compensation to Crowe, whatever, that I'll give them the names if they agree not to use them for any designs other than mine. Forget about compensation if they do. That's right. Your Honor, you can't un-ring that bell. Yes, you can. In your amended complaint, you un-ring that bell, so then where are we? Your Honor, we're at the point where essentially what she's saying is, what she's trying to frame this as is these extra contractual narrative contexts, but that's not what this was. Well, assume she amended her complaint and all she said was I will give them the names if they will not use these people to manufacture anything other than my designs, period. Now, why should that be dismissed at hand? Your Honor, I understand and that should still be dismissed and it's again what y'all brought up earlier. She has not pled plausible facts showing that she was damaged in any way by a purported breach of R.H. even if you accept that that is the agreement that R.H. entered into, which respectfully that's not what was pled, but even if you accept that, she hasn't set forth facts showing a plausible allegation of damage and here's why. In her first amended complaint, she alleges she suffered substantial monetary damages. She incurred significant financial damage and significant and extensive damages and financial injury. That's at record 43, 45, and 46, but how? These are conclusory allegations. There's no allegation that there was any compensation that was promised, so there's no agreement to pay her money. There's no allegation that her sales went down as a result of R.H. using these factories. There's no allegation she had to go out and find additional factories because these couldn't use her product anymore. She's articulated no injury that was caused by R.H.'s breach. At best, as the district court correctly found, the only thing she's lost is the opportunity to negotiate for future compensation and as Shaw herself put it in opposition to R.H.'s motion, Shaw claims she was deprived of the opportunity to benefit from use of the information, but that is not damage. The only value to Shaw is what R.H. might have been willing to pay her for this information or perhaps more aptly, what Shaw thought she could get out of R.H. for this information. A lost opportunity to try to negotiate for compensation, it's not damage. There is no compensable damage that was pled here, and this is really important because damage is an essential element of any breach of contract claim. It's also an essential element of detrimental reliance, and it's also an essential element of unjust enrichment, so the fact that she's failed to plead damage in three separate petitions, in her original, in her first, and even in her second amended complaint, which is not properly before the court, but it was proffered in connection with her motion for reconsideration, that shows that's . . . You made all these arguments in the district court. Yes, we did, Your Honor. We made them in opposition to the motion for reconsideration. We made them extensively at the hearing, and we made them in our appellate brief. It's at pages 34 and 35 of our appellate brief. It's how we discussed how the second amended complaint does nothing to change the fact that she hasn't alleged damage, which is pertinent to all three claims across the board. Your Honor, in addition to the fact that she didn't allege damage, she also hasn't met the requirements of detrimental reliance. She hasn't met the requirements of unjust enrichment. I'm happy to explain those to you if you guys have any questions. Does her pleading relate to the written agreement, somehow arguing that something in the written agreement triggered or allowed this oral set of . . . I mean, there was a written agreement, right? Yes, that's exactly true. Was there anything in the pleadings that either seeks to make a nexus to the written agreement from which these other claims might . . . I don't believe so, Your Honor. From my reading of the first amended complaint, it sets out the written agreement kind of as background. The parties had a written agreement, and under the written agreement, R.H. agreed to pay Shaw if it made products that used Shaw's designs. It was a specific royalty expressed in there. There's no claim whatsoever that R.H. didn't follow that agreement, that it didn't pay R.H., didn't pay Shaw what was owed to her, or that agreement was breached in any way. The oral agreement, the alleged oral agreement, I believe is a separate agreement that was entered after, according to Shaw's own theory. Again, detrimental reliance. You have to have a change to your detriment. There's no allegation of a change to her detriment here. In fact, providing these identities of these factories to R.H., it benefited Shaw because it allowed R.H. to manufacture those products and sell those products for which she was obtaining royalties under the agreement. The notion that any value in these manufacturers was harmed in any way, that's not plausible. That's not, there's no allegation that they forgot how to make her products or they couldn't make her products anymore. Um, and there's no damage. Same with unjust enrichment. The Louisiana Supreme Court's clear that when you plead other causes of action, you can't plead an unjust enrichment claim. That alone is a basis for denying that, but in addition, you have to have some expense, you have to have some impoverishment, you have to have some damage, and that wasn't alleged here. And as I started, the court correctly did not abuse its discretion in denying her leave to amend again. Respectfully, the decision should be affirmed, um, and the claim should be dismissed with prejudice. Thank you very much. I'll see you the rest of my time. Just a friendly comment. I don't care that you reference the court as you guys, but that doesn't bother me a bit, but some of our colleagues do, so. Okay. I appreciate the tip. For what it's worth, it's my first time here today, and I'm very, I very much appreciate the opportunity, so all tips welcome. Well, I'll go on record as saying I'm one that does. It seems to be a young person thing. I have to admonish my law clerks about that kind of thing, so. My sincerest apologies. Thank you very much, Your Honors. Your Honors, may it please the court. First, I would like to address opposing counsel's rule 16 applies here. Um, you know, rule 16 is for when a party misses a pleadings deadline, a deadline to amend pleadings, or, or doesn't otherwise comply with the scheduling order. All the cases that they have cited are cases in which the plaintiffs missed the deadline to amend pleadings and had not filed a motion for excess of time or requested leave. We, in this case, we filed, uh, or we requested leave almost two months before the first pleadings deadline, and then we filed two motion, consent motions for extensions of time to amend the pleadings, so we were well within rule 15, but Your Honors, even if rule 16 applies here, it requires good cause for leave to amend, and, and particularly in this case, good cause meaning why we could not comply with the court's deadline. Your Honors, the court's deadline was, was right on top of us before, before document production was even done. I mean, we, we, we didn't have information that we could use to amend the pleadings other than what we suggested at the time. Uh, so, so under rule 16, we should still should be granted leave to amend. Uh, uh, Your Honors, regarding, uh, uh, damages, it's, and I don't mean to, to retread the same ground, but in this case, we did plead, and, and the pleading hurdle is very low. We pled that Ms. Shaw and her company suffered financial damage and losses as a result of the breach of the oral agreement. That's all that's required. Well, it's got to be, that's very conclusory, and there's got to be some plausibility on the face of the complaint that connects the breach with the damages, and so what is that, and what is that? So the, the, the, the harm that she suffered was due to the fact that RH was using her artisans for, for non-Shaw work. Now, what? Okay, and, and, well, that's, that's breach of the agreement, and as a result of that, she suffered damages. Now, the damages model is to be bore out during, during the pre, pre-trial litigation. That's the domain of experts. You still have to plead it. Your counsel opposite is saying she didn't plead, you know, how she was financially harmed, i.e., her business dropped, they weren't able to do her work, etc., etc. Why would discovery later impact on being able to say that in the initial pleading or the Second Amendment if that's what she's claiming? Well, Your Honors, that, that's, that's exactly the low pleading standard that's required here is this, that she pleads that there is a causal relationship between those things. She . . . What is it that we're asking? The causal relationship is that the, the, the, and, and if it was not artfully pled, I apologize for that. We still, still should get a chance to, to amend, but the causal relationship is that those, it's, it, it's either that those artisans were not available her, to her, to use for her work, or it's because she was otherwise financially harmed because she had to go out and get new artisans. Is, well, those are facts you could have pled, and are you representing the court that that's true and you will plead that if we remand? No, Your Honor, I, I cannot represent that to the court right now. I, I would have to sit down with my client and I would have to, to figure that out. Well, that should have happened in a motion to reconsider and a motion to amend not here. I understand, Your Honor. I understand that's Your Honor's perspective. Ours is that the pleading, the, and, and, and I respectfully submit to Your Honors is that the, the pleading hurdle is low enough to . . . It's low, but you can't just plead conclusions. You've got to say something. I understand, Your Honors, but we were also well within the time period to, for the court to freely grant us leave to amend. Even so, I still came back, that's why I said, did you proffer what you would have said? And so, if that laid it all out, then we'd be on, was it abuse of discretion not to let you do it after the fact. But still, you're saying here now, you're still not saying that       . . . That's right. . . . That's right. . . . That's right. . . . That's right.   . . . And you're saying that the pleading would set forth these other matters. You're just saying it's conclusory, wait until discovery. And the, the threshold isn't that low. Well, Your Honors, I, I, I would submit that I've seen in, in 17, almost 17 years of doing this, I have never seen a court, a, a, a trial, a district court, in the federal court, or in the state court, require that we plead specifically what our damages model is to make it past . . . . . . It's a question. It's plausibility. You've got to, you can't just say, this happened and I'm damaged, and stand on that. You've got to explain why the fact that they asked these arsons to do work for them that were unrelated to her designs, damaged her. I understand, Your Honors. We, Your Honor, we, we still respectfully request that the court, uh, uh, reverse the district court's dismissal of our claims, or reverse the district court's, uh, uh, uh, denial of our motion for leave to amend, with all due respect. Well, let me just put you, ask you what I ask her. Does your pleading in any way refer to the written agreement as somehow triggering this oral agreement and what you are arguing? No, sir, Your Honor, and I'll listen to what my opposing counsel said. I agree with her on that. Okay. It's not part of the case. Got it. Will there be anything else, Your Honors? Thank you, Counselor. Thank you very much for your time. That will conclude the arguments for today. The court is recessed until 9 o'clock in the morning.